# IN THE UNITED STATES DISTRICT COURT
# FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

DR. SANJEEV KUMAR,

    Plaintiff,

    v.

UNITED HEALTH AND HOSPITAL SERVICES, INC., WYOMING VALLEY HEALTH CARE SYSTEM, INC., and WVHCS HOSPITAL,

    Defendants.

NO. 3:04-CV-2782

(JUDGE CAPUTO)

## MEMORANDUM

Presently before the Court is Defendants United Health and Hospital Services, Inc. ("UHHS"), Wyoming Valley Health Care System, Inc. ("WVHCS"), and WVHCS Hospital ("the Hospital")'s motion for summary judgment.  (Doc. 33.)  For the reasons set forth below, Defendants' motion for summary judgment will be granted.

This Court has jurisdiction over this matter pursuant to 28 U.S.C. § 1331 ("federal question"), 28 U.S.C. § 1332 ("diversity of citizenship"), 28 U.S.C. § 1343(a) ("civil rights and elective franchise"), 42 U.S.C. § 2000e-5(f)(3) ("unlawful employment practices" - "enforcement provisions"), and 28 U.S.C. § 1367(a) ("supplemental jurisdiction").

## BACKGROUND

Plaintiff, Dr. Sanjeev Kumar ("Dr. Kumar") is a permanent resident of the United States and a citizen of India.  (Doc. 1 ¶ 6.)  Dr. Kumar is of the Indian ethnic classification, and has dark-brown skin, causing him to be classified and perceived as

being non-white. (Doc. 1 ¶¶ 14, 16.) At all times material to this action, Plaintiff was employed by Defendant UHHS as a Resident Physician pursuant to a Residency Agreement. (Doc. 1 ¶ 28.) During the 2002/2003 academic year, during which the acts giving rise to this action occurred, the Residency program at the Hospital was comprised of 19 residents, 16 of whom listed countries of origin other than the United States.[1] In fact, only 5 of the 19 residents were "white," the rest hailing from various nations in Asia. Dr. Kumar was one of seven residents during the 2002/2003 academic year who listed his native country as India. (Doc. 35-24.)

Defendant UHHS terminated Plaintiff's employment on February 28, 2003 by letter of Dr. Maureen Litchman dated February 27, 2003. (Doc. 1 ¶ 28.)[2] According to Ms. Litchman's letter, Plaintiff's employment was terminated for a "serious violation of accepted professional standards" for allegedly attempting to kiss a Hospital employee and for making repeated advances towards her, all of which were rebuffed. (Doc. 35-1 ¶¶ 7-12). Plaintiff claims that this provided rationale for his termination was pre-textual, and that the true reasons for his termination are his race, national origin, and color. (Doc. 1 ¶ 47.)

According to Plaintiff, Defendant WVHCS controls the operations, finances, management, and personnel direction of Defendant UHHS, and further alleges that Defendant WVHCS caused and directed the termination of Plaintiff's employment. (Doc.

---

[1] The 19 residents in the 2002/2003 academic year represented the following nations: India (7), USA (3), Philippines (2), Germany (1), Poland (1), Bangladesh (1), China (1), Pakistan (1), Uzbekistan (1), and Tajikistan (1).

[2] Plaintiff's Complaint accidentally includes two paragraph number 28s. This statement is included in the second of these two paragraphs.

1 ¶¶ 25, 29.)  Defendants deny this administrative connection between the two entities, and further deny that Defendant WVHCS caused or directed Plaintiff's termination from employment.  (Doc. 6 ¶¶ 25, 29.)  Further, according to Plaintiff, Defendant Hospital controls the operations, finances, and personnel decisions of Defendant UHHS, and allege that Defendant Hospital caused and directed the termination of Plaintiff's employment.  (Doc. 1 ¶¶ 27, 30.)  Defendants deny this administrative connection between the aforesaid entities, and further deny that Defendant Hospital caused or directed Plaintiff's employment to be terminated.  (Doc. 6 ¶¶ 27, 30.)  Plaintiffs further allege, and Defendants deny, that Defendant WVHCS controls the operations and finances of Defendant Hospital.  (Doc. 1 ¶ 27; Doc. 6 ¶ 27.)

     Defendant UHHS had accused Plaintiff of engaging in an unconsented to kiss of another Hospital employee, Ms. Tammy Kreidler, on February 26, 2003.  (Doc. 1 ¶ 32.) The Hospital's video surveillance camera–located in the elevator in which this act occurred–filmed Plaintiff's interaction with Ms. Kreidler, including his hugging and attempting to kiss Ms. Kreidler.  (Doc. 35-12 pp. 18-20; Doc. 35-13 pp. 1-3).  Dr. Kumar also allegedly made other unwanted advances towards Ms. Kreidler, including telephoning her numerous times and stating that he "needed to see [her]", even though she repeatedly told Dr. Kumar that she had a boyfriend and was not interested in a relationship with him.  (Doc. 35-1 ¶¶ 10, 12.)  Ms. Kreidler sought guidance from a Hospital supervisor, Mr. Mike Marlott, regarding the occurrence in the elevator with Plaintiff.  (Doc. 1 ¶ 33.)  Mr. Marlott told Ms. Kreidler to speak with Ms. Barbara Halesey. Ms. Kreidler met on February 27, 2003 with Ms. Halesey, who is employed in the Human Resources Department of Defendant WVHCS.  (Doc. 1 ¶ 35.)  Ms. Kreidler recounted the

3

events of February 26, 2003 to Ms. Halesey.  According to Ms. Kreidler, during this meeting, Ms. Halesey made indications that her mind was made up as to what she wanted done with Plaintiff, and that she would make a recommendation to the appropriate decision-makers.  (Kreidler Aff., March 22, 2003 2; Doc. 1 ¶¶ 37-38.)  Defendants dispute what was discussed during this meeting.  (Doc. 6 ¶¶ 37-38.)  Plaintiff met later that same day with Ms. Halesey, Dr. Litchman, Dr. Deborah Spring (Plaintiff's residency advisor), and Len Paczkowski, a member of the Human Resources Department.  (Doc. 35-1 ¶ 15; Doc. 45 ¶ 15.)  At this meeting, Plaintiff repeatedly denied having been in an elevator the previous day with Ms. Kreidler.  (Doc. 35-1 ¶ 16.)  After Ms. Halesey told Dr. Kumar that she had viewed the surveillance video, which confirmed that he had been in the elevator with Ms. Kreidler the previous day, Dr. Kumar admitted to having rode in the elevator with Ms. Kreidler.  (*Id.*)  Dr. Kumar stated that Ms. Kreidler's prior comments–that he looked handsome and that his act in giving Ms. Kreidler his phone number "made her day"–had encouraged him to attempt to kiss her on February 26, 2003.  (*Id*.)  Also at this meeting, Dr. Kumar admitted to having kissed Ms. Kreidler "good-bye", but claimed that he never put his arms around her.  (*Id*.)  In deposition testimony given on August 8, 2005, Dr. Kumar admitted to having kissed Ms. Kreidler twice on the cheek before he left the elevator on February 26, 2003.  (Kumar Dep. 70:4-5, August 8, 2005.)  Dr. Kumar also admitted in this testimony that he had repeatedly lied when queried whether he had rode in the elevator with Ms. Kreidler on that date, claiming that he was nervous.  (Kumar Dep. 79:5-12, 81:9, 88:4,10,15.)

Ms. Kreidler learned on February 28, 2003 that Plaintiff had been fired.  (Doc. 1 ¶ 39.)  Ms. Kreidler met on March 3, 2003 with Drs. Maureen Litchman and Richard

English, who were Directors of the Wyoming Valley Family Practice Residency Program. (Doc. 1 ¶ 40.)  At this meeting, Ms. Kreidler told the doctors that she did not believe what had happened warranted Plaintiff's termination, and that she did not intend for that outcome to occur when she initially spoke to Mr. Marlott.  (Doc. 1 ¶ 41.)  Ms. Kreidler was then referred again to meet with Barbara Halesey later that same afternoon.  (Doc. 1 ¶ 42.)  At this meeting, after reiterating to Ms. Halesey that she did not believe what Dr. Kumar did warranted termination, Ms. Halesey said to Ms. Kreidler "[Y]ou shouldn't worry about other people so much.  Maybe you should just worry about yourself.  Everyone has problems.  From what I understand, you have a son but don't have a husband." (Kreidler Aff. 2.)  Ms. Halesey also stated to Ms. Kreidler at this meeting, with regard to Plaintiff, "they just come over here to get their education and then they go back."  (Kreidler Aff. 2.)  Defendants deny this statement having been made by Ms. Halesey.  (Doc. 6 ¶ 44.)  According to Ms. Kreidler and as alleged by Plaintiffs and denied by Defendants, Ms. Halesey appeared to be hostile during this meeting towards Dr. Kumar.  (Kreidler Aff. 2; Doc. 1 ¶ 45; Doc. 6 ¶ 45.)  Finally, Ms. Kreidler stated in her affidavit that "[f]rom her statement and her attitude I believed that she had made her recommendations [to terminate Dr. Kumar's employment], at least in part, on the basis of Dr. Kumar's national origin, being Indian."  (Kreidler Aff. 3.)  Ms. Kreidler was not permitted to attend Dr. Kumar's grievance hearing, even though she had indicated her willingness to do so.  (*Id*.)

On December 22, 2004, Plaintiff filed a Complaint (Doc. 1) against UHHS, WVHCS, and the Hospital.  On December 15, 2005, Defendants filed their Answer (Doc. 6) to Plaintiff's Complaint.  On July 28, 2006, Defendants filed the present motion for summary judgment (Doc. 33), along with a supporting brief (Doc. 34) and a statement of

undisputed material facts with attached exhibits (Doc. 35).  On August 31, 2006, Plaintiff filed an answer to Defendants' statement of undisputed material facts and counterstatement of undisputed material facts, and a brief in opposition to Defendants' motion for summary judgment.  (Docs. 45, 46.)  On September 15, 2006, Defendants filed a reply brief to Plaintiff's brief in opposition to the present motion for summary judgment, and an answer to Plaintiff's statement of undisputed material facts and counterstatement of undisputed material facts.  (Docs. 47, 48.)

This motion is fully briefed and ripe for disposition.

## LEGAL STANDARD

Summary judgment is appropriate if "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law."  FED. R. CIV. P. 56(c).  A fact is material if proof of its existence or nonexistence might affect the outcome of the suit under the applicable substantive law.  *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

Where there is no material fact in dispute, the moving party need only establish that it is entitled to judgment as a matter of law.  Where, however, there is a disputed issue of material fact, summary judgment is appropriate only if the factual dispute is not a genuine one.  *See id.* at 248.   An issue of material fact is genuine if "a reasonable jury could return a verdict for the nonmoving party."  *Id*.

Where there is a material fact in dispute, the moving party has the initial burden of

proving that: (1) there is no genuine issue of material fact; and (2) the moving party is entitled to judgment as a matter of law.  *See* CHARLES ALAN WRIGHT & ARTHUR R. MILLER, FEDERAL PRACTICE AND PROCEDURE: CIVIL 2D § 2727 (2d ed. 1983).  The moving party may present its own evidence or, where the nonmoving party has the burden of proof, simply point out to the Court that "the nonmoving party has failed to make a sufficient showing of an essential element of her case . . . ."  *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).

All doubts as to the existence of a genuine issue of material fact must be resolved against the moving party, and the entire record must be examined in the light most favorable to the nonmoving party.  *See White v. Westinghouse Elec. Co.*, 862 F.2d 56, 59 (3d Cir. 1988).  Once the moving party has satisfied its initial burden, the burden shifts to the nonmoving party to either present affirmative evidence supporting its version of the material facts or to refute the moving party's contention that the facts entitle it to judgment as a matter of law.  *See Liberty Lobby*, 477 U.S. at 256-57.

The Court need not accept mere conclusory allegations, whether they are made in the complaint or a sworn statement.  *Lujan v. Nat'l Wildlife Fed'n*, 497 U.S. 871, 888 (1990).  In deciding a motion for summary judgment, "the judge's function is not himself to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial."  *Liberty Lobby*, 477 U.S. at 249.

## DISCUSSION

Plaintiff raises four causes of action in his Complaint.  (Doc. 1.)  Count I alleges

that Defendants unlawfully terminated Plaintiff's employment based on his race, national origin, and color in violation of 42 U.S.C. § 2000e-2(a)(1) (Title VII of the Civil Rights Act of 1964).  Count II alleges that Defendants discriminated against Plaintiff on account of his race in violation of the Civil Rights Act of 1870, codified at 42 U.S.C. § 1981.  Section 1981 secures to all persons regardless of race the "full and equal benefit of all laws and proceedings for the security of persons and property" and "subject[s all persons] to like punishments, pains, [and] penalties".  In Count III, Plaintiff alleges unlawful termination from employment in violation of the Pennsylvania Human Relations Act, 43 P.S. § 955(a).  Finally, in Count IV, Plaintiff alleges that Defendants WVHCS and the Hospital aided, abetted, incited, compelled, and coerced racial discrimination against him in violation of 43 P.S. § 955(e).

In the present motion, Defendants have moved for summary judgment on the above-mentioned Counts I-IV.

**A.  Defendant WVHCS Hospital**

Defendants' counsel submitted a certificate of concurrence on July 28, 2006, in which they certify that Plaintiff's counsel has agreed to dismiss Defendant WVHCS-Hospital ("the Hospital") from this action.  (Doc. 33-3.)  Accordingly, Defendant Hospital will be terminated as a named defendant in this action.

**B.  Counts I, II, III, and IV - Unlawful Employment Termination on Basis of Race, Color, or National Origin - 42 U.S.C. § 2000e-2(a)(1); Racial Discrimination - 42 U.S.C. § 1981; Unlawful Termination from Employment - Pennsylvania Human Relations Act - 43 P.S. § 955(a); Aiding, Abetting, Compelling, or Coercing Racial Discrimination - Pennsylvania Human Relations Act - 43 P.S. § 955(e)**

Plaintiff claims that Defendants terminated his employment in violation of Title VII

8

and the PHRA.  Both Title VII and the PHRA make it unlawful for an employer to discharge an employee on the basis of that employee's race, color, or national origin. *See* 42 U.S.C. § 2000e-2(a)(1); 43 P.S. § 955(a).  The legal analysis is identical for both statutes.  *Burgh v. Borough Council of Borough of Montrose*, 251 F.3d 465, 469 (3d Cir. 2001).  Similarly, the legal analysis for racial discrimination under 42 U.S.C. § 1981 is identical to the analysis under Title VII, applying the *McDonnell Douglas* framework, discussed *infra*.  For the reasons stated below, the Court agrees with Defendants that Dr. Kumar cannot adduce sufficient evidence to create a genuine issue of material fact as to the contention that Defendants terminated his employment based on his race, color, or national origin.  Accordingly, summary judgment will be granted on Counts I-IV.

Plaintiff has presented his case under both the *McDonnell Douglas*/"pretext" theory and the *Price Waterhouse*/"mixed-motives" theory.  It is the duty of this Court to decide whether one or both of these proposed theories properly applies to Plaintiff's case. *Starceski v. Westinghouse Elec. Corp.*, 54 F.3d 1089, 1098 (3d Cir. 1995) (citations omitted).

### i. *Price Waterhouse* 'Mixed-Motives' Theory

Dr. Kumar argues that the comment made by Ms. Halesey that "they [presumably Indian people] just come over here to get their education and then they go back", and Ms. Kreidler's observation that "[f]rom [Ms. Halesey's] statement and her attitude I believed that she had made her recommendations [to terminate Dr. Kumar's employment], at least in part, on the basis of Dr. Kumar's national origin" evinces a clear bias against him based on his race, color, and national origin, and that this evidence requires the Court to

perform a *Price Waterhouse* "mixed motives" analysis. *Price Waterhouse v. Hopkins*, 490 U.S. 228 (1989). Whether a plaintiff has presented a pretext or a mixed motives case depends on the quality of the evidence that the Plaintiff adduces in support of the claim of illegal discrimination. *Walden v. Georgia-Pacific Corp.*, 126 F.3d 506, 512 (3d Cir. 1997). *See Wilson v. Susquehanna Twp. Police Dep't*, 55 F.3d 126 (3d Cir. 1995); *Starceski*, 54 F.3d 1089; *Armbruster v. Unisys Corp.*, 32 F.3d 768, 778 (3d Cir. 1994); *Hook v. Ernst & Young*, 28 F.3d 366 (3d. Cir. 1994). In her concurrence in *Price Waterhouse*, Justice O'Connor offered guidance on the type of evidence needed to make out a mixed-motives case. She reasoned:

> [S]tray remarks in the workplace, while perhaps probative of [a discriminatory animus], cannot justify requiring the employer to prove that its [employment] decisions were based on legitimate criteria. Nor can statements by nondecisionmakers, or *statements by decisionmakers unrelated to the decisional process itself*, suffice to satisfy the plaintiff's burden in this regard; . . . What is required is . . . direct evidence that decisionmakers placed substantial negative reliance on an illegitimate criterion in reaching their decision.

*Price Waterhouse*, 490 U.S. at 277 (O'Connor, J., concurring) (emphasis added) (internal citation omitted); *Armbruster*, 32 F.3d at 778. The Third Circuit Court of Appeals has stated repeatedly that a plaintiff must clear a high hurdle to make out a mixed-motives case: "The burden of persuasion shifts to the employer 'only after the plaintiff ha[s] proven that her employer acted unlawfully,' and not merely 'on the basis of a prime facie showing.' " *Hook*, 28 F.3d at 374 (quoting *Binder v. Long Island Lighting Co.*, 933 F.2d 187, 192 n.1 (2d Cir. 1991)). Put differently, a mixed motives instruction is warranted only when the proffered "evidence is sufficient to permit the factfinder to infer that [a discriminatory] attitude was more likely than not a motivating factor in the employer's

decision." *Griffiths v. CIGNA Corp.*, 988 F.2d 457, 470 (3d Cir. 1993), *overruled on other grounds*, *Miller v. CIGNA Corp.*, 47 F.3d 586 (3d Cir. 1995) (en banc).

In applying this standard to Dr. Kumar's case, the Court can not find that Ms. Halesey's comments constitute sufficient direct–or circumstantial–evidence to entitle Plaintiff to the burden-shifting benefit of the mixed-motives test. Ms. Halesey's comment to Ms. Kreidler concerning Plaintiff's reason for being in the United States for his education is probative of her personal discriminatory animus. Ms. Halesey was also undoubtedly one of the four individuals involved in deciding initially to terminate Plaintiff's employment. However, Plaintiff provides no evidence to create a genuine issue of fact as to the contention that a discriminatory attitude was more likely than not a motivating factor in the employer's decision to terminate Plaintiff's employment. After meeting with Plaintiff on February 27, 2003, all four of the decision-makers present, Ms. Halesey, Dr. Litchman, Dr. Spring, and Mr. Paczkowski, unanimously agreed that Plaintiff's employment should be terminated. Plaintiff offers no evidence that any of the other participants in the meeting shared, or were even aware of, Ms. Halesey's alleged feelings about Plaintiff. The Court can find no evidence in the record that the decision-makers considered Plaintiff's national origin, color, or race in terminating his employment.

Accordingly, Plaintiff has failed to produce the quality of evidence required to show that his is a mixed-motives case.

ii. *McDonnell Douglas* 'Pretext' Theory

The Court finds that the familiar *McDonnell Douglas* burden shifting analysis applies to Plaintiff's claims of employment discrimination. *McDonnell Douglas Corp. v.*

11

*Green*, 411 U.S. 792 (1973). Under this analysis, Plaintiff bears the initial burden of establishing a *prima facie* case of discrimination. *St. Mary's Honor Ctr. v. Hicks*, 509 U.S. 502, 506 (1993). If he satisfies this burden, the burden shifts to Defendants to articulate some legitimate, nondiscriminatory reason for terminating Dr. Kumar. *McDonnell Douglas*, 411 U.S. at 802. If Defendants can meet this burden, the presumption of discriminatory action raised by the *prima facie* case is rebutted. *Tex. Dep't of Cmty. Affairs v. Burdine*, 450 U.S. 248, 255 (1981). To survive summary judgment, Dr. Kumar then must present evidence that Defendants' proffered reason or reasons was merely a pretext for discrimination and not the real motivation for his termination. *Id.* at 253. He may do so by providing evidence that would allow a reasonable fact-finder to "(1) disbelieve the employer's articulated legitimate reasons; or (2) believe that an invidious discriminatory reason was more likely than not the motivating or determinative cause of [Defendants'] action." *Sarullo v. United States Postal Serv.*, 352 F.3d 789, 800 (3d Cir. 2003) (citations omitted), *cert. denied*, 541 U.S. 1064 (2004).

The existence of a *prima facie* case of discrimination is a question of law for the Court. It requires a showing that: (1) the Plaintiff belongs to a protected class; (2) he was qualified for the position; (3) he was subject to an adverse employment action despite being qualified; and (4) either non-members of the Plaintiff's protected class were treated more favorably, or the circumstances of the Plaintiff's termination raise an inference of discrimination. *See id.* at 797; *Goosby v. Johnson & Johnson Med., Inc.*, 228 F.3d 313, 318-319 (3d Cir. 2000); *Pivirotto v. Innovative Sys., Inc.*, 191 F.3d 344, 357 (3d Cir. 1999). This test is flexible and must be tailored to fit the specific context of a given case.

*Sarullo*, 352 F.3d at 797-98.  Plaintiff indisputably has satisfied prongs (1), (2), and (3) of the analysis.  Further, within the knowledge of the parties, no resident or employee of UHHS or WVHCS, of any race or national origin has ever been sanctioned, let alone terminated, for sexual harassment.  Therefore, it is the Court's duty to decide, as a matter of law, if the circumstances of Dr. Kumar's termination raise an inference of discrimination.

Even assuming that they do, however, which would thereby establish Plaintiff's *prima facie* case of discrimination, Defendants are entitled to summary judgment. Plaintiff has failed to rebut Defendants' proffered nondiscriminatory reason for terminating him, *i.e.*, that his behavior with respect to Ms. Kreidler was in violation of WVHCS's disciplinary procedures and subjected him to involuntary termination.  (Doc. 35-23 pp. 8,9.)  Having met their burden, the presumption of discriminatory action raised by the *prima facie* case is rebutted.  *Burdine*, 450 U.S. at 255.  In order to survive summary judgment, Dr. Kumar must have presented evidence creating a genuine issue of fact that Defendants' proffered reason was merely a pretext for discrimination and not the real motivation for his termination.  He has failed to do so.  The Court holds as a matter of law, therefore, that Plaintiff has failed to provide evidence that would allow a reasonable fact-finder to either (1) disbelieve Defendants' articulated legitimate reason for his termination, or (2) believe that an invidious discriminatory reason was more likely than not the motivating or determinative cause of [Defendants'] action.  *Sarullo*, 352 F.3d at 800.

Furthermore, Plaintiff's termination was subject to an appeal process that was conducted over a period of three months and included two hearings, neither in which was Ms. Halesey a decision-maker.  The appeals committee upheld Plaintiff's termination

based on the findings, *inter alia*, that his actions towards Ms. Kreidler were in direct violation of the Hospital's sexual harassment policy and that he lied repeatedly when initially queried about his actions towards Ms. Kreidler.  There is simply no evidence in the record to support Plaintiff's contention that discrimination on the basis of his national origin, color, or race was more likely than not the motivating or determinative cause of his termination.

Viewing the entire record in the light most favorable to Plaintiff, the Court is of the opinion that there is no genuine issue as to any material fact relative to Plaintiff's Counts I-IV, and that Defendants are entitled to judgment as a matter of law on these Counts. Accordingly, Defendants' present motion for summary judgment will be granted.

## CONCLUSION

After reviewing all pertinent evidence from the record, the Court is of the opinion that no genuine issue of material fact exist in this case, and that Defendants are entitled to judgment as a matter of law.  Accordingly, Defendants' motion for summary judgment will be granted.

An appropriate Order will follow.

Date: January  22 , 2007                              _____
                                                                              A. Richard Caputo
                                                                              United States District Judge

**IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| DR. SANJEEV KUMAR, | |
| Plaintiff, | NO. 3:04-CV-2782 |
| v. | (JUDGE CAPUTO) |
| UNITED HEALTH AND HOSPITAL SERVICES, INC., WYOMING VALLEY HEALTH CARE SYSTEM, INC., and WVHCS HOSPITAL, | |
| Defendants. | |

## ORDER

**NOW**, this  22nd  day of January, 2007, **IT IS HEREBY ORDERED** that Defendants United Health and Hospital Services, Inc., Wyoming Valley Health Care System, Inc., and WVHCS Hospital's motion for summary judgment (Doc. 33) pursuant to Federal Rule of Civil Procedure 56 is **GRANTED**.

                                                                               /s/ A. Richard Caputo  
                                                                              A. Richard Caputo  
                                                                              United States District Judge